OPINION OF THE COURT
Geraldine T. Eiber, J.
Pursuant to an order to show cause, the People seek to preclude the New York State Office of Mental Health from granting on and off unescorted grounds privileges and a discharge to the patient respondent, Anonymous A.
FINDINGS OF FACT
On May 28, 1981, the respondent was arrested on charges of menacing (Penal Law, § 120.15), criminal possession of a weapon in the fourth degree (Penal Law, § 265.01), and resisting arrest (Penal Law, § 205.30). The respondent was arraigned in Criminal Court and the Judge ordered a CPL article 730 mental examination to determine if the respondent was an incapacitated person. Thereafter, Judge Deeley found the respondent to be an incapacitated person and issued a final order of observation on June 25, 1981 committing the respondent to Manhattan Psychiatric Center where he has been continuously held since that date. On March 25, 1982, Judge Thomas *428 Hughes granted an order of civil retention pursuant to section 9.33 of the Mental Hygiene Law for a period not to exceed six months.
On July 26, 1982, Dr. Gabriel Koz, Director of Manhattan Psychiatric Center approved Anonymous A. for on and off grounds privileges and for discharge to become effective August 4, 1982. Pursuant to CPL 730.60 (subd 6, par [a]) notice of the change in the patient’s status was served on August 3,1982 on the District Attorney of Queens County. Thereafter, the District Attorney moved in the Supreme Court, Queens County, for a hearing pursuant to CPL 730.60 (subd 6, par [c]) for an order to show cause why a hearing should not be held to determine the mental condition of the defendant, prior to any change in defendant’s status. Justice Nicholas Ferraro granted the order to show cause and set the matter down for a hearing.
On December 6, 1982, oral argument was heard by this court on the issue of whether the District Attorney has standing to request a hearing pursuant to CPL 730.60 (subd 6, par [c]) where the 90-day final order of observation had expired. This court reserved decision on the motion, but conducted a hearing as to the patient’s mental status.
The People, in order to sustain their burden of going forward, called Dr. Deborah Kaiser, a clinical psychologist, as their witness. Pursuant to an order of Justice Seymour Rotker, the doctor examined the respondent on September 2,1982. The pertinent parts of the doctor’s report indicated that: The patient’s psychiatric history commenced at age 17 requiring multiple hospital admissions. Some of the admissions stemmed from criminal activities. At the time of his arrest in this incident, the patient had been discharged from a psychiatric facility and in accordance with his discharge he was directed to attend an out-patient clinic (he failed to comply with regulations requiring regular attendance).
The doctor’s report further indicates: ’
“In January, 1982, the Hospital Forensic Committee denied Anonymous ‘A’s’ discharge; less than two months later (3/9/82) they recommended discharge; two months after that (5/12/82) the Committee denied his discharge *429 stating he was a danger to others (one week later notice was served of discontinuance unescorted ground privileges); and two months later (7/21/82) the Hospital Forensic Committee again recommended release. In March and again in July (3/23/82 and 7/28/82) clinical progress notes indicate the patient’s condition had deteriorated, and in the latter instance (exactly 6 weeks prior to the date of this report) Anonymous ‘A’ was ‘agitated and threatening’ and placed in seclusion. This was one week after he had been recommended for release.
“Anonymous ‘A’ came willingly to the interview. His affect was flat, his memory somewhat impaired. He responded to questions in a willing but not particularly friendly manner.”
Dr. Kaiser’s clinical findings indicated that the patient is “totally without insight as to the causes of his behavior and his condition has not remitted for any appreciable length of time since this admission.” She. diagnosed the patient as “suffering from a schizophrenic, paranoid type, which is chronic with acute exacerbation and that his prognosis was guarded at that time.” She recommended that only unescorted on grounds privileges be granted so that the patient may attend a rehabilitation program.
The respondent called Dr. John Schermin, a board-eligible psychiatrist, to testify on his behalf. He stated that as the respondent’s ward doctor, he saw him approximately 20 times. He said that the patient was receiving 300 milligrams of thorazine four times a day and that the dosage was recently reduced to three times a day. The doctor diagnosed the patient as being a paranoid schizophrenic who is delusional, although he is in a period of remission. The doctor concluded that Anonymous A. would not be a danger to himself or to others so long as he was properly medicated and managed. He recommended that the respondent should be removed from the hospital in order to participate in some sort of release program but was very vague as to what programs or housing were available or being considered for the respondent and informed the court that their policy requires formal discharge prior to arrangement for out-patient care.
*430 After Dr. Schermin recommended the release of the respondent, this court, on December 9, 1982, ordered Dr. Kaiser to re-examine the respondent to determine if his condition had changed since the doctor’s last report on September 2, 1982. The doctor’s re-examination of the patient indicated that his condition remained unchanged.
The respondent also called Dr. Roger Biron, a board-certified psychiatrist, who reported that he had seen the respondent four times and found that the patient suffers from incurable schizophrenia, although his condition is stable due to medication. However, the doctor added that he did not believe the respondent’s condition would improve. Dr. Biron also found that the respondent has little insight into his condition and that he has depressive features, and advised that the respondent should be medicated for at least five years. The doctor could give no assurance that the respondent would take his medication if he was discharged.
CONCLUSIONS OF LAW
The primary issues before the court are (1) whether the District Attorney may be granted a hearing to determine if a defendant committed to the custody of the Commissioner of Mental Hygiene pursuant to CPL 730.60 should be released or given a less restrictive status and (2) whether the respondent should be granted a discharge and/or less restrictive status.
The District Attorney argues that the notice provisions of CPL 730.60 (subd 6, par [a]) should Be construed broadly to allow him to request a hearing on the change of a patient’s status when he is committed pursuant to CPL 730.40 (subd 1) and 730.60. The District Attorney further argues that CPL 730.60 (subd 6, par [c]) allows him to apply for a hearing where the defendant is in the custody of the commissioner pursuant to a final order of observation (see People v Jones, 112 Misc 2d 841). This court notes that the respondent in the herein matter was charged with three misdemeanor charges and when the local criminal court Judge issued his final order of observation for 90 days on June 25, 1981, the charges were dismissed pursuant to CPL 730.40 (subd 2).
*431 The court finds that this case is in a legal “no man’s land.” Under CPL 730.40 (subd 2), the charges against this defendant were dismissed when Judge Deeley issued a final order of observation on June 25, 1981, and 90 days later, the order automatically terminated. (See People v Helfman, 91 AD2d 1034.) Therefore, when the commissioner notified the District Attorney of the change in the defendant’s status on June 26,1982, the defendant was an involuntary patient committed pursuant to section 9.33 of the Mental Hygiene Law as ordered by Justice Hughes on March 25, 1982 and no longer in the commissioner’s custody pursuant to CPL 730.70. While CPL 730.60 (subd 6, par [a]) mandates notice be given to certain designated interested persons including the District Attorney, however, CPL 730.60 (subd 6, par [c]) only offers the District Attorney the right to a hearing on the change of a defendant’s status where he is retained on a final order of retention (see People v Helfman, supra). Therefore, the District Attorney is left in a “catch 22” situation, he can only challenge the defendant’s change in status during the 90 days but is helpless after the 91st day when notice of a purported change is given.
The court finds this result unsatisfactory. As the facts in this case would indicate, the respondent can be released on the hospital administrator’s own decision without the right of the People to even challenge the possible dangerousness of the patient. In a desire to empty institutions and meet budgetary goals, society finds itself in a position where people are put out into the streets even though they are not capable of coping with the everyday life situations. As indicated by the history of this patient, he is not capable of following medication directives where such medicine (300 milligrams of thorazine three times a day) is necessary for his stability and nonviolent existence. Surely this could not have been the intent of the Legislature when they gave a whole class of people including the District Attorney the right of notice of a change in status of a patient. This type of legislation only can leave the District Attorney, the public and this court frustrated and thwarted in an effort to protect the public.
Perhaps the Legislature should readdress the problem *432 and allow for some form of hearing so that each defendant can be evaluated by a court based on adequate medical testimony. Such a hearing would serve as an additional check on the present unilateral decision by hospital administrators who are anxious to release patients without providing proper after-care treatment. A review of this patient’s hospitalization record indicates that his doctors recommended and then rescinded his change in status and discharge on several occasions over a seven-month period. The “yo-yo” type of evaluation made of this patient is certainly indicative of his own doctors’ inability to determine the dangerousness or the lack of dangerousness of this patient.
Presently, these hospital administrators and psychiatrists can hide comfortably behind the American Psychiatric Association credo that psychiatrists cannot predict whether a patient is dangerous to himself or others and, therefore, they are free of accountability for an improper release of a patient. The American Psychiatric Association in a recent position paper on criminal insanity indicated “it was quite skeptical about procedures in many states requiring periodic psychiatric reassessments of whether a patient is still dangerous.” Dr. Loren Roth, chairman of the commission’s report explained “Psychiatrists have great difficulty in predicting dangerous behavior and that the best indicator of future violence was a past record of violence, not a psychiatric diagnosis.” The association further urged “that decisions on whether to release such patients be made not solely on the basis of psychiatric testimony but by a broader group, perhaps similar to a parole board. No release should occur unless the patient can be given carefully supervised outpatient treatment to protect himself and the public from harm.”*
In conclusion, this court feels that it is incumbent upon the Legislature to re-evaluate the notice and hearing provisions of CPL 730.60 in order to put some “teeth” into the statutes. The notice provided now only allows those notified to protect themselves. The public at large and the patient himself are not protected from an ill-advised release.
*433 The court, however, must adhere to thé Appellate Division, Second Department, ruling in People v Helfman (supra) and the present language of the statute. Accordingly, the order to show cause brought by the District Attorney is dismissed.

 New York Times, Jan. 20, 1983, p A18.